FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATIONAL URBAN LEAGUE; LEAGUE OF WOMEN VOTERS; BLACK ALLIANCE FOR JUST IMMIGRATION; HARRIS COUNTY, Texas; KING COUNTY, Washington; CITY OF LOS ANGELES, California; CITY OF SALINAS, California; CITY OF SAN JOSE, California; RODNEY ELLIS; ADRIAN GARCIA; NAVAJO NATION; NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; CITY OF CHICAGO, Illinois; COUNTY OF LOS ANGELES, California; GILA RIVER INDIAN COMMUNITY, | No. 20-16868<br><br>D.C. No. 5:20-cv-05799-LHK<br>Northern District of California,<br>San Jose<br><br>ORDER |

Plaintiffs-Appellees,

v.

WILBUR L. ROSS, in his official capacity as Secretary of Commerce; UNITED STATES DEPARTMENT OF COMMERCE; STEVEN DILLINGHAM, in his official capacity as Director of the U.S. Census Bureau; UNITED STATES CENSUS BUREAU,

Defendants-Appellants,

and

STATE OF LOUISIANA; STATE OF MISSISSIPPI,

Intervenor-Defendants.

Before: GRABER, W. FLETCHER, and BERZON, Circuit Judges.

Just as the 2020 decennial census was getting underway, the COVID-19 pandemic hit, freezing operations and disrupting a process that had taken nearly a decade to plan. The Census Bureau ("Bureau") instituted a revised schedule on April 13 ("COVID-19 Plan"), extending its operations to account for this delay. But on August 3, 2020, the Secretary of Commerce ("the Secretary") announced a new schedule ("the Replan"), under which the Bureau greatly compressed, as compared both to the original schedule and to the COVID-19 Plan, the time allocated to various stages for completing the census. The district court issued a preliminary injunction preventing the Bureau from implementing its proposed Replan schedule for conducting the census. Addressing the government's emergency motion for a stay of the preliminary injunction pending appeal, we conclude that the government is unlikely to succeed on the merits of the appeal as to the Plaintiffs' Administrative Procedure Act ("APA") claims. To the extent that the district court enjoined the Replan and the September 30, 2020, deadline for data collection, the government has not met its burden in showing irreparable harm, and the irreparable harm to the Plaintiffs and the resulting balance of equities justify the denial of a stay. To the extent that the district court enjoined the

government from attempting to meet the December 31, 2020, statutory deadline for completing tabulations by state, the government has, at this juncture, met its burden in seeking a stay pending appeal. We therefore deny the government's motion for a stay in part and grant it in part.

## I.

The "Bureau's mandate in conducting the decennial census is to count everyone living in the United States" and its territories, as Bureau Associate Director Fontenot described in his September 5 declaration. The Bureau spent most of the last decade planning the 15.6 billion dollar 2020 decennial census, an undertaking of extreme complexity.

The four critical interlocking steps of the 2020 census are: (1) soliciting self-response by households, electronically or by mail; (2) non-response follow-up ("NRFU"); (3) data processing; and (4) submission by the Secretary of the two statutorily required reports based on the census data. 13 U.S.C. § 141(b)–(c). The Secretary is required to tabulate the total population by state for congressional apportionment, a task that "shall be completed within 9 months after the census date," of April 1. *Id.* § 141(b). The Secretary also must tabulate population data used by states for districting, which "shall be completed by him as expeditiously as possible after the decennial census date" and "shall, in any event, be completed,

reported, and transmitted to each respective State within one year after the decennial census date." *Id.* § 141(c).

Just six days after the self-response period began, in March 2020, COVID-19 stopped the entire census process in its tracks. Following Office of Management and Budget ("OMB") guidance, the Bureau completely suspended decennial field operations for 47 days between March 18 and May 4, and restarted operations in phases over the next two weeks. During that freeze, the Bureau created a new schedule to accommodate the COVID-19 delays.

On April 13, 2020, the Bureau adopted the COVID-19 Plan, extending the total time for the census from 54 weeks to 71.5 weeks. This extension restored to the schedule the 47 days lost to the complete pandemic shutdown. The Plan also provided additional time for field operations to restart and conclude by October 31, 2020. The Bureau reasoned that the pandemic would make hiring and training the huge temporary staff needed more difficult. Additional time would also be required for the NRFU process, both because of relocations caused by the pandemic and because of the difficulty of in-person canvassing when respondents would be reluctant to interact with enumerators for fear of contracting the illness. The extension also built in more time for data processing, needed to address the complexities of population shifts caused by COVID-19.

The Bureau requested that Congress accordingly extend the statutory deadlines by 120 days. Government officials, from the President to Bureau officers, strenuously maintained that the current statutory deadlines were impossible to meet after the delays and changes caused by the COVID-19 suspension and its aftermath. The House of Representatives passed a bill extending the statutory deadlines for reporting; the Senate Small Business and Entrepreneurship Committee held a hearing on the bill on July 23, 2020. Soon thereafter, the Administration switched gears, requesting, instead of an extension, additional funding to complete a "timely" census. Census Bureau Director Dillingham, when asked about the change at a House hearing, no longer supported an extension.

On July 31, 2020, the Bureau removed the October 31, 2020, deadline for data collection field operations from its website. Over the next four days, Bureau staff and officials prepared a presentation for Secretary Wilbur Ross on the feasibility of moving the end of data collection to September 30, 2020 and completing the data processing necessary for reapportionment by December 31. Despite the Bureau's months-long position that meeting the statutory deadlines was impossible, Secretary Ross on August 3, 2020, approved the new Replan schedule, which ended field operations by September 30 and the initial data processing stage by December 31, 2020. This plan condensed the total time to

conduct the census to 49.5 weeks, 4.5 weeks less than the pre-COVID schedule of 54 weeks and 22 weeks less than the extended COVID-19 schedule adopted to account for past and future pandemic-related delays. The Secretary announced the Replan in a two-page press release, which contained no explanation concerning why the previous projected need to extend the deadlines no longer obtained.

A coalition of plaintiffs, including advocacy organizations, cities, counties, and tribal groups (collectively, "Plaintiffs"), filed suit to enjoin the Replan, alleging violations of both the APA and the Enumeration Clause of the Constitution. The district court granted, and then extended, a temporary restraining order. The government argued that "there is no administrative record in this case because there is no APA action." But both sides agreed that discovery, in the short term, could be limited to non-privileged documents provided to the Department of Commerce Inspector General for a report on the Replan.

Based on that record, the district court issued a preliminary injunction. The court held that Plaintiffs had a high likelihood of success on the merits of their APA claim and so did not reach the question whether the Replan directly violated the Enumeration Clause. The court's order stayed the "Replan's September 30, 2020 deadline for the completion of data collection and December 31, 2020 deadline for reporting the tabulation of the total population to the President" and "enjoined [the defendants] from implementing these two deadlines."

After the district court entered its injunction, the government continued to publicize the September 30, 2020, data collection deadline on its website. Enumerators across the country—the individuals hired to conduct the census by contacting inhabitants—reported being told that operations would end on September 30. On September 28, 2020, the Bureau announced, on Twitter and in a press release, that it would now end data collection on October 5, 2020, which it justified in an internal document as the date adopted "in order to meet apportionment delivery date of December 31, 2020." The district court subsequently issued an order clarifying the scope of the injunction, explaining that the injunction "'postpone[s] the effective date of' th[e] two Replan deadlines and so reinstates the administrative rule previously in force: the COVID-19 Plan deadlines of October 31, 2020 for the completion of data collection and April 30, 2021 for reporting the tabulation of total population to the President." The district court determined that the October 5 deadline violated the injunction, also noting that it suffered "the same legal defects as the Replan." The court required the Census Bureau to notify employees that "data collection operations will continue through October 31, 2020." The Bureau recently complied with that directive.

The government appealed and requested both an administrative stay and a stay of the preliminary injunction. On September 30, this court denied the administrative stay. *National Urban League v. Ross*, - F.3d -, 2020 WL 5815054

(9th Cir. Sept. 30, 2020). The question now before us is whether to grant a stay pending appeal to a merits panel.

## II.

"A party requesting a stay pending appeal 'bears the burden of showing that the circumstances justify an exercise of [judicial] discretion.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)). In determining whether to grant the government's motion for a stay, "we apply the familiar standard set forth by the Supreme Court in *Nken*, namely: (1) whether the Government has made a strong showing of the likelihood of success on the merits; (2) whether the appellants will be irreparably injured absent a stay; (3) whether a stay will substantially injure other parties; and (4) where the public interest lies." *Id.* (quoting *Nken*, 556 U.S. at 426). "The first two factors . . . are the most critical." *Id.* (quoting *Nken*, 556 U.S. at 434). "We review the scope of the district court's preliminary injunction for abuse of discretion." *Id.* (citing *California v. Azar*, 911 F.3d 558, 568 (9th Cir. 2018), *cert. denied sub nom. Little Sisters of the Poor Jeanne Jugan Residence v. California*, 139 S. Ct. 2716 (2019)).

## A.

The government's primary argument as to why it is likely to succeed on the merits of its appeal is that the district court erred in determining that the Replan was a "final agency action" subject to APA review. The government has not made

the requisite strong showing that it is likely to prevail on this point.

To maintain a cause of action under the APA, a plaintiff must challenge "agency action" that is "final." *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 800 (9th Cir. 2013) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61–62 (2004)). To be reviewable as an "agency action," the challenged act of the agency must be "circumscribed" and "discrete." *Norton*, 542 U.S. at 62–63. The government maintains that the Replan fails this test, as it "is a collection of individual judgments by the Census Bureau, all subject to constant revision." The government does not have a strong likelihood on this record of supporting that characterization.

The Replan was characterized in the short August 3 Press Release as a change in census operations and in the deadlines for completing those operations "to accelerate the completion of data collection and apportionment counts by our statutory deadline of December 31, 2020." Unlike in *NAACP v. Bureau of the Census*, 945 F.3d 183 (4th Cir. 2019), Plaintiffs challenge the decisionmaking process that went into the decision in the Replan to greatly accelerate the census process over the COVID-19 Plan, not specific "design choices" within that plan. *Id.* at 188. And unlike in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), which held that there was no discrete agency action in an "APA challenge to 'each of the 1250 or so individual classification terminations and withdrawal

revocations' effected under the land withdrawal review program," *id.* at 881, a term that was "not derived from any authoritative text," *id.* at 890, the district court here found that the Bureau treated the Replan as a single proposal, presented "to the Secretary in a single slide deck" and announced in a single press release.

As to the other requisite for APA review, finality, for an agency action to be "final," "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature . . . . [and] the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). Here, the new deadlines were announced publicly, the Replan was implemented by the Bureau, and when the district court first ruled, data collection was set to cease on September 30. The district court concluded that significant legal consequences will flow from the timing and deadlines of the census, including consequences to political representation, federal and state funding, and degradation of census data, due to likely inaccuracies in the reported totals of hard-to-count populations. These effects echo the consequences faced by the Plaintiffs in *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019), which also analyzed a final agency action concerning census decisionmaking under the APA. *Id.* at 2565.

In sum, the government has not made a strong showing that it is likely to

prevail on appeal on its primary challenge to the district court's merits ruling.

**B.**

The government also argues that, if the Replan is reviewable, the district court erred in concluding that its adoption likely violated the APA, so the government is likely to succeed on the merits of this appeal. The government's barebones, one-note argument on this point does not meet the stringent *Nken* "strong showing" standard. The district court laid out in great detail five grounds on which to find Plaintiffs were likely to succeed on their contention that the government did not meet the APA's standards for reasoned decisionmaking.

APA review "is limited to 'the grounds that the agency invoked when it took the action.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Ca.*, 140 S. Ct. 1891, 1907 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)). Agency action is arbitrary and capricious where the agency "entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), an analysis which "turns on what [the] relevant substantive statute makes 'important,'" *Or. Nat'l Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996). Here, the Enumeration Clause demonstrates a "strong constitutional interest in accuracy" in the census, *Utah v. Evans*, 536 U.S. 452, 478 (2002), and "[t]he [Census] Act imposes 'a duty to conduct a census that is accurate and that fairly accounts for the crucial

11

representational rights that depend on the census and the apportionment,'" *Dep't of Commerce*, 139 S. Ct. at 2568–69 (quoting *Franklin v. Massachusetts*, 505 U.S. 778, 819–20 (1992) (Stevens, J., concurring in part and concurring in the judgment)). Both the Constitution and the relevant statutes governing the Bureau thus require that "the agency must examine the relevant data and articulate a satisfactory explanation for its action" taking into account the strong interest in accuracy. *State Farm*, 463 U.S. at 43. The government's arguments for a stay largely decline to discuss this requirement, instead focusing on the purported need to meet the December deadline at all costs.[1]

The record of the agency's decisionmaking during the few days that the

---

[1] Title 13 U.S.C. § 141(b) requires that "[t]he tabulation of total population by States . . . as required for the apportionment of Representatives in Congress among the several States shall be completed *within 9 months after the census date* and reported by the Secretary to the President of the United States." *Id.* (emphasis added). The census date is specified as "the first day of April" every tenth year. *Id.* § 141(a). The parties have both understood § 141(b) to require tabulation and reporting by December 31, 2020, so we therefore assume that interpretation here. We note, however, that the statute contemplates a time frame in which to complete the census, rather than a specified date, as it does in § 141(a). The subsequent requirement in 2 U.S.C. §2a(a) for the President to transmit apportionment data to Congress also gives a contingent deadline of "the first day, or within one week thereafter, of the first regular session" of Congress. We leave open the question whether, given the wording of the statutes and general considerations regarding the interpretation of statutory timelines, the agency should view this deadline as inflexible or, instead, as subject to adjustment, akin to equitable tolling or force majeure concepts, if they cannot be met because of extraordinary circumstances. Perhaps, as President Trump publicly stated in April, "I don't know that you even have to ask [Congress for an extension]. This is called an act of God. This is called a situation that has to be."

Replan was being developed does not show *any* response, let alone a "satisfactory explanation," to the numerous statements by Bureau officials that accelerating the schedule adopted in the COVID-19 Plan would jeopardize the accuracy of the census. Most importantly, the August 3 slide deck presented to the Secretary giving "Operational and Processing Options to meet September 30, 2020" warns that "[a]ccelerating the [field operations] schedule by 30 days introduces significant risk to the accuracy of the census data." This accuracy concern went unaddressed—beyond an unsupported attestation that the count would be accurate—in the barebones press release announcing the Replan or elsewhere in the administrative record.

The district court also concluded that there was a striking lack of evidence in the record showing that the Bureau had considered the extensive reliance interest on the COVID-19 Plan. That conclusion is amply supported. "When an agency changes course, as [the Bureau] did here, it must 'be cognizant that longstanding policies may have "engendered serious reliance interests that must be taken into account."'" *Dep't of Homeland Sec.*, 140 S. Ct. 1891 at 1913 (quoting *Encino Motorcars, LLC v. Navarro*, 136 S.Ct. 2117, 2126 (2016)). "It would be arbitrary and capricious to ignore such matters." *Id*. (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

13

The August 3 Press Release and the Replan slide deck do not consider reliance interests at all. The Bureau depends heavily on its own advertising and partnerships with private organizations to drive participation in the census, particularly in hard-to-reach communities. Toward this end, targeted public advertising was increased under the COVID-19 Plan. Nowhere do the brief Replan materials consider that the Bureau and its partners had been relying on and disseminating information based on the October 31 deadline for data collection. Nor did the government address the reliance interest of the public in following the October 31 deadline for self-reporting and for responding to enumerators' contact efforts, and therefore not filling out a census or responding to a census worker before September 30.[2] These basic gaps in the government's attention to the pertinent factors, along with the other considerations surveyed by the district court, are sufficient to demonstrate that the government has not made a strong showing of likelihood of success on appeal as to the APA claim.

The government does not really argue to the contrary regarding the various ways in which it failed its APA obligation to engage in reasoned decisionmaking. Its only argument that it has met the APA's requirements is its mantra that the Replan was necessary to meet the statutory deadline. But the worthy aspiration to

---

[2] Title 13 U.S.C. § 221 imposes a fine of "not more than $100" to anyone who "refuses or willfully neglects" to answer any census questions when requested by an authorized census officer.

14

meet that deadline does not excuse the failure to address *at all* other relevant considerations, such as accuracy and reliance. It also does not excuse the failure to consider whether, given the timeline of congressional action laid out by the district court, the statutory deadline could have been moved; whether the deadline might be retroactively adjusted, as was done in several earlier censuses; or whether the deadline might be equitably tolled due to the force majeure of the pandemic, particularly given the evidence before the Bureau at the time of both the COVID-19 Plan and the Replan decisions suggesting that the deadline was already unlikely to be met without sacrificing the accuracy of the count.

As the APA requires that agencies engage in "reasoned decisionmaking," *State Farm*, 463 U.S. at 52, the agency had an obligation to *consider* its other obligations and any alternatives, even if it could properly end up rejecting them. The record before us shows little evidence of that reasoning, nor does it show that "the Secretary examined 'the relevant data' and articulated 'a satisfactory explanation' for his decision, 'including a rational connection between the facts found and the choice made.'" *Dep't of Commerce*, 139 S. Ct. at 2569 (quoting *State Farm*, 463 U.S. at 43). The government therefore has not made a strong showing of likely success on appeal as to the merits of the APA claim.

## C.

With respect to the September 30, 2020, data collection deadline in the

15

Replan, the government has also not met its burden in making a strong showing either that the Plaintiffs will not succeed in establishing irreparable injury under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), or that the government will suffer irreparable harm if a stay is issued under *Nken*.

The government argues that it will suffer irreparable harm if a stay is not issued, as it represents that it will be unable to meet the statutory deadline of December 31 if it cannot end counting by October 5. A longer data collection period does leave less time for processing. But the President, Department of Commerce officials, Bureau officials, and outside analysis from the Office of the Inspector General, the Census Scientific Advisory Committee, and the Government Accountability Office all stated unequivocally, some before and some after the adoption of the Replan, that the Bureau would be unable to meet that deadline under any conditions.

The government's current representation that it will be able to meet the statutory deadline if it ends collection by October 5 is a very recent development, at odds with Associate Director Fontenot's prior September 22 declaration, in which he stated: "we wish to be crystal clear that if the Court were to extend the data collection period past September 30, 2020, the Census Bureau's ability to meet its statutory deadlines to produce apportionment counts prior to December 31, 2020 and redistricting data prior to April 1, 2021 would be seriously

16

jeopardized." The government's current justification—"that the enumeration is approaching a 99% target in nearly every state"[3]—speaks to accuracy of the count, but does not explain why the shortening of processing time below three months is consistent with Director Fontenot's prior declaration. So while there is a risk of irreparable harm to the government in denying a stay, there is also a great likelihood, given the wealth of evidence in the record, that the harm is already likely to occur.

In any event, as the district court determined in applying the *Winter* factors, the balance of hardships decidedly favors the Plaintiffs, who make a strong showing that they will suffer irreparable harm if a stay of the injunction is granted. *Nken*, 556 U.S. at 426. This court, in denying an administrative stay, explained that staying the injunction would "risk[] rendering the plaintiff's challenge to the Replan effectively moot." *National Urban League*, 2020 WL 5815054, at *2. "Thousands of census workers currently performing field work will be terminated, and restarting these field operations and data-collection efforts, which took years of planning and hiring efforts to put in place, would be difficult if not impossible . . . ." *Id.* The harms to apportionment and distribution of federal and

---

[3] To the extent that the current enumeration targets are relevant, the government noted at Oral Argument that it has not hit 99% enumeration in 7 states and is only at 97% in three states, below its own target throughout the planning and implementation of the 2020 census, including in the Replan slide deck.

state funding that the Plaintiffs allege from the Replan would be impossible to remedy until the next census in 2030. *See, e.g.*, *Dep't of Commerce*, 139 S. Ct. at 2565 (discussing similar harms).

Finally, the September 30, 2020 data collection deadline has no direct statutory hook. Its connection to the government's only strongly articulated irreparable injury—meeting at all costs the December 31 date the government understands to be statutorily required and inflexible, *but see supra* note 1—is based on ever-changing projections about the connection between the data collection and data processing stages. According to the government, its own predictions about the art of the possible at the data collection stage proved wrong. We are not told why the predictions as to what could be accomplished at the data processing stage—or whether the deadline could be moved if necessary—are more accurate.

The government has therefore failed to meet its burden to justify a stay pending appeal as to the district court's injunction of the September 30, 2020 data collection deadline.

### D.

To the extent that the district court did not merely stay the Replan but *required* the government to continue to ignore the December 31 timeline for completing the tabulation, the *Nken* factors do justify a stay pending appeal.

"The effect of invalidating an agency rule is to reinstate the rule previously

in force." *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 970 (9th Cir. 2015) (en banc) (quoting *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005)). The district court was therefore correct that the effect of enjoining the Replan deadlines was to reinstate the COVID-19 plan. Under the COVID-19 plan, data collection continues until October 31, 2020, and processing *could* continue until April 30, 2021, under the assumption that the deadline for reporting to the President could be tolled or extended if necessary.

But the district court's order went further: it "enjoined [the defendants] from implementing" *both* the September 30, 2020 internal agency deadline *and* the statutory December 31, 2020 deadline. In other words, once data collection ends on October 31, 2020, the order precludes the government from meeting the December 31 date even if it can do so, or if it develops another way to meet its statutory obligation. The plaintiffs have not at this juncture made the same showing of irreparable harm as to precluding any consideration of the statutory deadline that they have made as to the nonstatutory data collection deadline. So their likelihood of success on appeal on this point is—on the current record—weaker.

Moreover, the December 31, 2020, deadline is nearly three months away. As we have already stated, predictions as to whether it can still be attained are speculative and unstable. And any harm from governmental attempts to meet the December 31 date are likely less irreparable than the injury from displacing the

19

October 31 data collection endpoint. If the Bureau meets the December 31 date by using procedures that violate any accuracy requirement embedded in the Enumeration Clause, or proceeds in an arbitrary and capricious manner, existing data can be reprocessed more easily than data collection can be restarted. Moreover, given the remaining time, leaving the December 31, 2020 date in place as an aspiration will have no immediate impact. Perhaps the Bureau will find that with an extraordinary effort or changes in processing capacity, it is able to meet its deadline. Or the Department of Commerce may seek and receive a deadline extension from Congress. Or perhaps the Bureau will miss the deadline, as statement after statement by everyone from agency officials to the President has stated it would, due to the extraordinary circumstances of the pandemic. Missing the deadline would likely not invalidate the tabulation of the total population reported to the President, *see, e.g.*, *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 157, 171–72 (2003), and may well be approved by Congress after-the-fact, as has happened in the past, *see, e.g.*, Act of Sept. 1, 1841, ch. 15, § 1, 5 Stat. 452, 452 (1841).

Finally, and of great import to our balancing of the equities, and consideration of the public interest, even if—as both parties aver—data processing cannot be completed by December 31 as a practical matter, that does not mean that missing the putative statutory deadline should be required by a court. Serious

separation of powers concerns arise when a court seeks to override a congressional directive to an Executive Branch agency. *See, e.g.*, *Wisconsin v. City of New York*, 517 U.S. 1, 17 (1996) (recognizing Congress's broad constitutional authority over the census). There is therefore a strong argument for judicial restraint while the ability to meet or extend the deadline, and any resulting injury, is still speculative.

To the extent that the district court enjoined the Defendants from attempting to meet the December 31 date, that injunction is stayed pending appeal.

**Emergency Motion for a Stay DENIED IN PART and GRANTED IN PART.**