**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 13-1492**

---

CLEAR SKY CAR WASH LLC; CLEAR SKY CAR WASH OPERATING LLC;
SAMUEL JACKNIN, founder, owner and managing agent of Clear
Sky; CHARLES EINSMANN, co-founder, co-owner and agent of
Clear Sky,

            Plaintiffs - Appellants,

       v.

CITY OF CHESAPEAKE, VIRGINIA; CAROLE GILLESPIE, natural
person, individually and in her capacity as City Right of
Way Manager; GREENHORNE & O'MARA, INCORPORATED, d/b/a
Greenhorne & O'Mara Consulting Engineers, and in its
capacity as and for the City; THOMAS COPELAND, natural
person, individually and as agent of the City; EVELYN JONES,
natural person, individually and as agent of the City;
DANIEL JONES, natural person, individually and as agent of
the City; VIRGINIA DEPARTMENT OF TRANSPORTATION, by and
through the current Commissioner of Highways, now Gregory
Whirley, Sr., in his capacity as such; UNITED STATES
DEPARTMENT OF TRANSPORTATION, by and through its current
Secretary, now Ray LaHood in his capacity as such,

            Defendants - Appellees.

---

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.   Mark S. Davis, District
Judge. (2:12-cv-00194-MSD-LRL; 2:12-cv-00195-MSD-TEM)

---

Argued: October 29, 2013      Decided: February 21, 2014

---

Before NIEMEYER, MOTZ, and DIAZ, Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Motz and Judge Diaz joined.

————————

**ARGUED:** Edward Joseph Grass, Burke, Virginia, for Appellants. Thomas Jeffrey Salb, BREEDEN, SALB, BEASLEY & DUVALL, PLC, Norfolk, Virginia; Kent Pendleton Porter, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellees. **ON BRIEF:** Rebecca L. Dannenberg, FRANKLIN & PROKOPIK, PC, Herndon, Virginia, for Appellees Greenhorne & O'Mara, Incorporated, Thomas Copeland, Evelyn Jones, and Daniel Jones. Christopher D. Eib, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee Virginia Department of Transportation. Neil H. MacBride, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee United States Department of Transportation.

————————

NIEMEYER, Circuit Judge:

In connection with a project to widen Dominion Boulevard (U.S. Route 17) in the City of Chesapeake, Virginia, the City took the property of Clear Sky Car Wash LLC, consisting of a 32,056-square-foot parcel of land on which Clear Sky operated a car wash. Following unsuccessful negotiations with Clear Sky to purchase the property, the City initiated a "quick take" proceeding to take the property, pursuant to Virginia Code §§ 33.1-119 and 33.1-120, filing a "certificate of take" in state court and depositing $2.15 million with the court as its proffered just compensation. Under this procedure, the City was able to take title to the property immediately, leaving the resolution of any dispute over the property's valuation to be resolved in condemnation proceedings.

Although the state proceedings were pending, Clear Sky and its principals commenced this action to challenge the City's conduct (1) in arriving at its $2.15 million valuation (which Clear Sky contends was too low); (2) in negotiating with Clear Sky (which Clear Sky alleges was conducted in bad faith); and (3) in initiating the quick take proceeding "prematurely." It claims that the City's conduct violated the mandatory real property acquisition policies set forth in 42 U.S.C. § 4651, which are made applicable to state agencies when, as here, federal funds are involved, see id. § 4655.

3

On the defendants' motions to dismiss, the district court concluded that § 4651 did not create enforceable rights and dismissed the complaint.

For the reasons that follow, we affirm.

I

In November 2008, the Chesapeake City Council passed a resolution approving a project of the Virginia Department of Transportation ("VDOT") to widen a portion of Dominion Boulevard (U.S. Route 17) and to replace the bridge that passes over the southern branch of the Elizabeth River. The project was to be funded by the City, the VDOT, and the U.S. Department of Transportation ("USDOT") and was to be managed by the City.

The project required that various parcels of land be acquired, including the parcel owned by Clear Sky. The City hired two separate appraisers to determine the value of Clear Sky's parcel, and each appraisal relied on a square-foot basis of valuation, without considering comparative values of other pad sites.[1] In August 2011, the City transmitted copies of both appraisals to Clear Sky and stated that it was accepting the

---

[1] "Pad site" is understood to refer to any freestanding parcel of commercial real property located in front of or near a shopping center such that it benefits from traffic to the shopping center.

appraisal that valued Clear Sky's property at $2.15 million, the lower of the two.

Between August 2011 and January 2012, Clear Sky and the City discussed at length Clear Sky's objections to the City's appraisal. According to Clear Sky, some of the City's agents eventually acknowledged problems with the appraisal, agreeing, for example, that its depreciation calculation was incorrect. Nonetheless, on January 27, 2012, the City formally offered Clear Sky the $2.15 million amount as just compensation for Clear Sky's property, and Clear Sky rejected the offer.

The City thereafter initiated a quick take proceeding, as authorized by the Virginia Code, filing a certificate of take in the Circuit Court for the City of Chesapeake on March 22, 2012, and depositing $2.15 million with the court. Clear Sky unsuccessfully attempted to remove that proceeding to federal court, see City of Chesapeake v. Clear Sky Car Wash LLC, No. 2:12cv195, 2012 WL 3866508 (E.D. Va. Sept. 5, 2012), and simultaneously commenced this action, naming as defendants the City, several of its employees and agents, the VDOT, and the USDOT. The complaint alleged that the defendants violated Clear Sky's rights under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. §§ 4601-4655, in pursuing the acquisition of its property.

More particularly, the complaint alleged that in preparing for its taking of Clear Sky's property, the City obtained two appraisals, both of which "undervalue[d]" the land by "at least $1 million" by failing to take into account the value of comparable pad sites.  It alleged that the City then used those appraisals to conduct negotiations with Clear Sky in bad faith, failing to timely provide information in response to Clear Sky's questions and providing information that was "largely incomplete" and "not all truthful."  It also alleged that even though the City recognized that the appraisal on which it had chosen to rely included errors in its depreciation calculation and failed to use "comparable properties outside the area," the City never addressed these problems and instead stuck with its original appraisal of $2.15 million.  Finally, the complaint alleged that the City inappropriately "declin[ed] to discuss settlement," opting instead to file a certificate of take, which prematurely effected a quick take of Clear Sky's property under Virginia law.  Based on the City's appraisals, negotiations, and quick take procedures, Clear Sky alleged that the City, its agents, and its partners violated Clear Sky's rights under 42 U.S.C. §§ 4651 and 4655.

Relying on these allegations, the complaint set forth six causes of action.  Count I alleged that the defendants failed "to act in compliance with and subject to the mandates of the

6

[URA]" in a number of ways, including by obtaining and using inappropriate appraisals; conducting negotiations in bad faith; failing to deposit "a sufficiently large sum" for the taking in court; filing their quick take proceeding "prematurely"; and "improperly attempting to obtain entry on and possession of the property." Count II alleged that the defendants' conduct violated Clear Sky's rights under the Due Process Clauses of the Fifth and Fourteenth Amendments. Count III alleged that the conduct violated Clear Sky's rights under the Equal Protection Clause of the Fourteenth Amendment. Count IV alleged that the defendants violated 42 U.S.C. §§ 1983 and 1985 in denying Clear Sky its interests in "the proper application of the [URA]." Count V alleged a Virginia common law claim for breach of contract. And Count VI alleged a Virginia common law claim for equitable estoppel. The complaint sought declaratory and injunctive relief and demanded damages "in a sum not less than $9 million."

The defendants filed motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and the district court granted the motions, dismissing the complaint with a Memorandum Opinion dated December 18, 2012. See Clear Sky Car Wash, LLC v. City of Chesapeake, 910 F. Supp. 2d 861 (E.D. Va. 2012). The court held first that it lacked subject matter jurisdiction over Count I because it rested on alleged violations of the URA's

7

land acquisition policies, as set forth in Subchapter III of the Act, 42 U.S.C. §§ 4651-4655. Citing Gonzaga University v. Doe, 536 U.S. 273 (2002), it found that Subchapter III did not create a federal right of action for landowners. To the extent that Clear Sky might have also been claiming a right to relocation assistance under Subchapter II of the URA, the court likewise concluded that that Subchapter created no right of action. In addition, the court noted as to Subchapter II that Clear Sky had "failed to allege that [it] made even one application for relocation assistance payments" and had similarly "allege[d] no facts concerning . . . advisory relocation assistance." Clear Sky Car Wash, 910 F. Supp. 2d at 880-81, 83. It thus concluded that although it would generally have jurisdiction to review relocation assistance determinations under the Administrative Procedure Act ("APA"), Clear Sky had "failed to allege a final agency action sufficient to trigger such jurisdiction." Id. at 883.[2] Based on its conclusion that the URA did not confer privately enforceable rights, the court dismissed Counts II, III, and IV for failure to state a claim. Finally, with respect to Counts V and VI, the court declined to exercise supplemental

_____

[2] We agree with the district court that Clear Sky's complaint did not allege that the defendants violated Subchapter II by failing to provide relocation assistance. Accordingly, we do not address whether Clear Sky could have stated a claim under Subchapter II.

8

jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) inasmuch as it had dismissed all the federal claims.

From the district court's judgment, Clear Sky filed this appeal, challenging the court's ruling that the URA did not create a private right of action and that neither 42 U.S.C. § 1983 nor the APA provided it with avenues for relief under the URA.

II

Clear Sky notes on appeal that the URA requires federal agencies that are acquiring real property to take certain steps "to assure consistent treatment for owners . . . and to promote public confidence in Federal land acquisition practices," listing ten specific policies that must be followed. 42 U.S.C. § 4651. Because its property was taken in connection with a project funded in part by the United States, Clear Sky states correctly that § 4655 made § 4651 applicable to the City and the VDOT as a condition of federal funding. Therefore, because these policies were mandated by federal law and imposed on state agencies, Clear Sky claims that it was entitled to enforce compliance with those policies (1) by a direct cause of action against the offending parties; (2) by an action under 42 U.S.C. § 1983 to secure its rights in those policies; or (3) under the APA, which provides for review of agency actions -- in this

9

case, the actions of the USDOT.  We address these arguments in order.

A

To determine whether the URA creates an implied right of action for enforcement of the policies mandated by § 4651, we must determine "whether Congress intended to create a federal right."  Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002).  And, to that end, we look to the relevant statute.

Section 4651 provides that "heads of Federal agencies shall, to the greatest extent practicable, be guided by" ten policies enumerated in that section when acquiring real property from landowners.  42 U.S.C. § 4651.  The policies specify, for example, that the head of a federal agency shall "make every reasonable effort to acquire expeditiously real property by negotiation," obtain an appraisal of the real property at issue, and promptly "offer to acquire the property for" "an amount which he believes to be just compensation therefor," but which shall in no event "be less than the agency's approved appraisal of the fair market value of such property."  Id.  Section 4655 then extends the reach of § 4651 by requiring federal agencies distributing federal funds to condition their grants to state agencies on their agreement to comply with § 4651's land acquisition policies:

10

> [T]he head of a Federal agency shall not approve any . . . grant to . . . an acquiring agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property . . . unless he receives satisfactory assurances from such acquiring agency that (1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 4651 of this title . . . .

Id. § 4655(a). As a result, state agencies that have received federal funds for a project generally "must comply with § 4651 to the greatest extent legally possible under state law." City of Columbia v. Costle, 710 F.2d 1009, 1013 (4th Cir. 1983).

In short, the URA directs that "the head of a Federal agency" be guided by the policies of § 4651 when acquiring land or that he assure himself that the state agencies are guided by them when using federal funds to acquire land. The statutory directive is aimed at the agency head, and it omits any language conferring rights or benefits on landowners. Indeed, to the contrary, § 4602(a) specifically provides: "The provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." 42 U.S.C. § 4602(a) (emphasis added).

It is axiomatic that we will not recognize an implied right of action under a statute "where the text and structure of [the] statute provide no indication that Congress intend[ed] to create

11

new individual rights." Gonzaga, 536 U.S. at 286. To create a private right of action, Congress must "speak[] with a clear voice," id. at 280, and the statute must "unambiguously," id. at 283, express the intent "to create not just a private right but also a private remedy," id. at 284 (quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001)). In this case, not only did Congress not speak with a clear voice and unambiguously provide Clear Sky both a private right and remedy, it spoke with a clear voice and unambiguously to the contrary, stating that the policies in § 4651 "create no rights or liabilities." 42 U.S.C. § 4602(a).

Clear Sky would have us imply a private right because § 4602(a) only refers to § 4651, which lists the policies, and does not include a reference to § 4655, which requires that the federal policies be applied to state agencies. This argument, however, overlooks the respective roles of §§ 4651 and 4655 and their relationship to each other. Section 4655 does not independently create any policies. Rather, it serves only to extend the § 4651 policies to state agencies when those agencies use federal funds to acquire real property. It is § 4651 that provides the source for the mandated substantive policies, and those policies are expressly qualified by § 4602(a), which rejects their use as a basis for a right of action.

12

At bottom, we hold that the URA, in imposing policies on the heads of federal and state agencies in §§ 4651 and 4655, creates no individually enforceable rights. Therefore, Clear Sky lacks any basis for a private action to remedy violations of those sections. See Gonzaga, 536 U.S. at 286.

B

Clear Sky contends that even if it lacks a right of action under the URA itself, 42 U.S.C. § 1983 provides it with a vehicle to enforce §§ 4651 and 4655.

Section 1983, however, does not confer any substantive rights; rather, it supplies a remedy for rights conferred by other federal statutes or by the Constitution. See Gonzaga, 536 U.S. at 284 ("Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983"). And determining whether another statute -- here, 42 U.S.C. §§ 4651 and 4655 -- confers rights for enforcement under § 1983 "is no different from the initial inquiry in an implied right of action case." Id. at 285.

Because we conclude that 42 U.S.C. §§ 4651 and 4655 do not confer individual rights enforceable by Clear Sky, we also conclude that Clear Sky cannot enforce those sections under 42 U.S.C. § 1983. Accordingly, we affirm the district court's dismissal of Clear Sky's § 1983 claim.

13

C

Finally, Clear Sky asserts that it "has a right to immediate judicial review based on the APA." It argues that the USDOT's failure to require the City to comply with the URA was "per se arbitrary, capricious, and not in accordance with the law," and it contends that it is entitled, under the APA, to an injunction ordering the USDOT to compel the other defendants to comply with § 4651.

Because the URA expressly provides that § 4651 "create[s] no rights or liabilities," 42 U.S.C. § 4602(a), some courts have concluded that there can be no judicial review under the APA of an agency's compliance with § 4651's policies. See, e.g., Paramount Farms, Inc. v. Morton, 527 F.2d 1301, 1304 (7th Cir. 1975); see also 5 U.S.C. § 701(a)(1) (withdrawing APA review where relevant statute "preclude[s] judicial review"). But regardless of whether § 4602(a) can be interpreted as precluding judicial review under the APA, Clear Sky cannot seek relief under the APA because it never asserted an APA claim in its complaint. The only mention of the APA is made in the complaint's opening statement of jurisdiction:

> Jurisdiction in this Court is proper for all of the claims and causes of action in this Complaint pursuant to 28 U.S.C. § 1331 (original federal question jurisdiction), 1343, 1346(a)(2) (claims against the United States not exceeding $10,000), 1358 (in the alternative, original jurisdiction for condemnation by agencies of the United States), et seq., 5 U.S.C.

14

§§ 701 and 702 et seq., (federal judicial review of certain administrative matters), 28 U.S.C. §§ 2201-2202 (declaratory relief regarding rights and legal relations); 28 U.S.C. § 1367(a) (supplemental jurisdiction in the alternative), as well as in relation to 42 U.S.C. §§ 1983, 1985, and 1988 et seq., 42 U.S.C. § 4601 et seq., and 49 C.F.R. Part 24.

(Emphasis added). This passing reference is insufficient to plead a cause of action under the APA for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

Moreover, even reading the alleged facts of the complaint liberally does not remotely suggest the existence of a "final agency action," as necessary to justify judicial review under the APA. "Agency action," as used in 5 U.S.C. § 704, refers to "an agency's determination of rights and obligations, whether by rule, order, license, sanction, relief, or similar action." Village of Bald Head Island v. U.S. Army Corps of Eng'rs, 714 F.3d 186, 193 (4th Cir. 2013) (emphasis added) (citation omitted). And for agency action to be final, it must "mark the consummation of the agency's decisionmaking process." Id. at 194 (quoting Bennett v. Spear, 520 U.S. 154, 178 (1997)); see also Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv., 637 F.3d 259, 265 (4th Cir. 2011). Moreover, final agency action does not encompass an agency's "day-to-day manage[ment]." Village of Bald Head Island, 714 F.3d at 194. At most, the complaint here suggests only arguably that the USDOT should have

15

monitored the City's conduct more closely and required it to comply with § 4651.  But such ongoing oversight does not amount to final agency action under § 704.

Accordingly, we reject Clear Sky's argument that it has an APA claim against the USDOT to require it to enforce the policies of § 4651.

For the foregoing reasons, the judgment of the district court dismissing Clear Sky's complaint is

AFFIRMED.