**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1863

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED
PEOPLE; PRINCE GEORGE'S COUNTY, MARYLAND; PRINCE GEORGE'S
COUNTY MARYLAND NAACP BRANCH; ROBERT E. ROSS; H.
ELIZABETH JOHNSON,

                Plaintiffs - Appellants,

    v.

BUREAU OF THE CENSUS; STEVEN DILLINGHAM, Acting Director, Bureau
of the Census; WILBUR ROSS, Secretary of Commerce; THE UNITED STATES,

                Defendants - Appellees,

      and

DONALD J. TRUMP, President of the United States

                Defendant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Paul W. Grimm, District Judge.  (8:18-cv-00891-PWG)

Argued:  October 30, 2019                Decided:  December 19, 2019

Before GREGORY, Chief Judge, and KEENAN and RICHARDSON, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Keenan
wrote the opinion, in which Chief Judge Gregory and Judge Richardson joined.

**ARGUED:** Rachel Brown, YALE SCHOOL OF LAW, New Haven, Connecticut; Jessica Ring Amunson, JENNER & BLOCK, LLP, Washington, D.C., for Appellants. Thais-Lyn Trayer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Michael J. Wishnie, Renee Burbank, Nikita Lalwani, Joshua Zoffer, Daniel Ki, Peter Gruber Rule of Law Clinic, YALE LAW SCHOOL, New Haven, Connecticut; Susan J. Kohlmann, Jeremy M. Creelan, Michael W. Ross, Jacob D. Alderdice, Logan J. Gowdey, JENNER & BLOCK LLP, New York, New York; Anson C. Asaka, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, INC., Baltimore, Maryland, for Appellants. Joseph H. Hunt, Assistant Attorney General, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Robert K. Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellees.

---

BARBARA MILANO KEENAN, Circuit Judge:

The Enumeration Clause of the Constitution requires that Congress conduct an "actual Enumeration" of the population every ten years, the results of which are used for the apportionment of Congressional representatives and the allocation of federal funding. U.S. Const. art. I, § 2, cl. 3; amend. XIV, § 2. But, despite its paramount importance in our constitutional scheme, no Census ever has counted the population accurately. *Wisconsin v. City of New York*, 517 U.S. 1, 6 (1996). Instead, it is widely acknowledged that each decennial Census inevitably results in an "undercount" of the American public.

This undercount is not spread uniformly across the population. *Id.* The Census Bureau long has recognized that the undercount affects African Americans and other "racial and ethnic minority groups to a greater extent than it does whites." *Id.* And, because the results of the Census directly impact both political representation and the allocation of federal funding, this "differential undercount" has had the effect of disproportionately reducing the amount of political representation and funding that undercounted communities receive. *Id.*

This appeal addresses a challenge to the "methods and means" that the Census Bureau has adopted for the 2020 Census, and the contention that the 2020 Census will produce an even greater differential undercount. Plaintiffs-Appellants are the National Association for the Advancement of Colored People (NAACP); Prince George's County, Maryland; Prince George's County, Maryland, NAACP Branch; Robert E. Ross; and H. Elizabeth Johnson (collectively, the plaintiffs). They represent "hard-to-count" communities that historically have suffered the greatest harms from differential

3

undercounts, and that directly will lose federal funding if, as the plaintiffs assert, the differential undercount increases in 2020. Defendants-Appellees are the Census Bureau and its Director, the Secretary of Commerce, and the United States (collectively, the defendants).

The plaintiffs' claims, brought under both the Enumeration Clause and the Administrative Procedures Act (APA, or Act), 5 U.S.C. §§ 701 *et seq.*, were dismissed by the district court. The court first dismissed the Enumeration Clause claims, holding that they were unripe and would not be justiciable until after the Census was completed. Separately, the court held that the plaintiffs' claims under the APA failed to identify any "agency action" within the meaning of the Act, and therefore were not subject to judicial review.

On appeal, the plaintiffs argue that the district court erred in dismissing both sets of claims. According to the plaintiffs, their claims under both the APA and the Enumeration Clause are based on "six discrete decisions" set forth in the Census Bureau's final plans for the 2020 Census, and each decision directly and imminently will exacerbate the differential undercount of the communities the plaintiffs represent. Thus, the plaintiffs contend that their claims are ripe and are subject to review under both the APA and the Enumeration Clause.

Upon our review, we hold that the plaintiffs' APA claims, as pleaded, do not satisfy the jurisdictional limitations on judicial review set forth in the APA. Therefore, we affirm the district court's judgment dismissing those claims.

4

Nevertheless, mindful of the Supreme Court's recent guidance affirming judicial review of "both constitutional and statutory challenges to census-related decision-making," *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019), we conclude that the district court erred in dismissing the plaintiffs' Enumeration Clause claims as unripe, and in precluding the plaintiffs from filing an amended complaint regarding those claims after the defendants' plans for the 2020 Census became final. Additionally, we decline to address in the first instance the defendants' alternative arguments for affirming the district court's judgment. We therefore reverse the district court's dismissal of the Enumeration Clause claims, and remand that portion of the case to allow the plaintiffs to file an amended complaint setting forth their Enumeration Clause claims.

I.

This appeal arises from a brief but complicated procedural history, throughout which the factual and the legal bases of the plaintiffs' claims changed significantly. For that reason, we begin by reviewing the proceedings below in some detail.

The plaintiffs filed this suit in March 2018, initially asserting multiple violations of the Enumeration Clause but no claims under the APA. At the time of this initial filing, and at the time of the plaintiffs' first amended complaint in June 2018, the Census Bureau lacked a permanent director and a deputy director, and openly was cancelling pre-Census activities based on the lack of appropriations from Congress. Against this backdrop, the plaintiffs alleged that the Census Bureau's lack of funding and staffing, exacerbated by "design flaws" in the defendants' plans to rely on new technologies for the Census, would

5

lead to a dramatic population undercount. The plaintiffs averred that this undercount disproportionately would impact African Americans and other "hard-to-count" communities, thereby diminishing the political representation and the amount of federal funding that these communities would receive.

The defendants moved to dismiss the plaintiffs' claims for failure to state a claim and for lack of justiciability. The district court addressed the defendants' motion by memorandum opinion in January 2019. The court first held that the plaintiffs' allegations were sufficient to confer standing under the Enumeration Clause, and that judicial review was not barred by the political question doctrine. But, reasoning that judicial review was premature and that the plaintiffs' alleged injuries could be redressed after the 2020 Census was taken, the court held that the Enumeration Clause claims challenging the "methods and means" of conducting the Census were unripe and dismissed those claims without prejudice. However, the court allowed the Enumeration Clause claim based on underfunding to proceed, identifying that one claim as "ripe" for relief.

Just days after the district court's decision, the Census Bureau announced that its "Operational Plan" for the 2020 Census was final.[1] The plaintiffs immediately sought leave to amend their complaint (1) to introduce claims under the APA, and (2) to "reinstate" their Enumeration Clause claims based on the methodology set forth in the Operational Plan. The district court granted the plaintiffs leave to introduce claims under the APA but

---

[1] The Operational Plan was released on December 31, 2018. From the record, it appears that the parties did not recognize this development until February 1, 2019, when the Census Bureau published documents affirming that the previously released Operational Plan "reflects [the] final design" for the Census.

6

denied leave to replead the other Enumeration Clause claims. Notwithstanding the release of the Operational Plan, the district court determined that Enumeration Clause claims based on the planned "methods and means of conducting the 2020 Census" still were not ripe.

In accordance with the district court's instructions, the plaintiffs filed a second amended complaint (Complaint) identifying six "irrational design choices" in the Operational Plan. The plaintiffs asked the court to "set aside" each "design choice" under Section 706(2) of the APA. 5 U.S.C. § 706(2). As pleaded, those "choices" were: (1) "a plan to hire an unreasonably small number of enumerators;" (2) "a drastic reduction in the number of Census Bureau field offices;" (3) "cancellation of crucial field tests;" (4) "a decision to replace most in-field address canvassing with in-office address canvassing;" (5) "a decision to make only extremely limited efforts to count inhabitants of housing units that appear vacant or nonexistent based on unreliable administrative records;" and (6) "a significant reduction in the staffing of the Bureau's partnership program."

The defendants filed a renewed motion to dismiss, seeking dismissal of the APA claims, as well as the remaining Enumeration Clause claim that was based on underfunding. The district court granted the defendants' motion in its entirety.

The district court dismissed the plaintiffs' underfunding claim, holding that the claim had been rendered moot by recent Congressional appropriations, and that the plaintiffs lacked standing to challenge the adequacy of those appropriations. Next, addressing the APA claims, the court held that the plaintiffs had failed to identify any reviewable "agency action" over which the court could exercise jurisdiction. Finally, the court held that despite the fact that the APA claims were articulated as requests to "set

7

aside agency action" under Section 706(2), those claims were, in substance, requests to "compel agency action" under Section 706(1). Therefore, the court concluded that the APA claims failed on the additional ground that the actions the plaintiffs sought to compel were not "required by law," a precondition for claims brought under Section 706(1). Accordingly, the court granted the defendants' motion and dismissed the Complaint.

## II.

On appeal, the plaintiffs argue that the district court erred in dismissing the APA claims on jurisdictional grounds, and in dismissing the Enumeration Clause claims as unripe. We address each argument in turn.

## A.

We begin by considering the APA claims, which the district court dismissed after concluding that the face of the Complaint failed to identify any "agency action" reviewable under the Act. We review de novo the district court's assessment of its jurisdiction under the APA. *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 454 (4th Cir. 2004). Because the district court concluded that it lacked jurisdiction based on the face of the Complaint, we accept the truth of the factual allegations contained in the Complaint and draw all reasonable inferences in the plaintiffs' favor. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

Judicial review under the APA is limited to review of "final agency action." 5 U.S.C. § 704. To constitute "final agency action" within the meaning of Section 704, the challenged action must have two characteristics. *Vill. of Bald Head Island v. U.S. Army*

8

*Corps of Eng'rs*, 714 F.3d 186, 193-94 (4th Cir. 2013). First, the challenged action must be "circumscribed and discrete." *Id.* at 194 (citation omitted); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-63 (2004). This requirement derives from the APA's definition of "agency action," which includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13); *see also* 5 U.S.C. § 701(a)(2) (adopting the definition given in Section 551). All five specific examples given in this definition are "discrete" in character, and only actions that share this "characteristic of discreteness" are reviewable under the APA. *Norton*, 542 U.S. at 62-63. Thus, even claims based on an agency's "failure to act" must allege the failure to take "discrete" agency action. *Id.* at 63.

Second, the "agency action" must be "final." *Vill. of Bald Head Island*, 714 F.3d at 194. Agency action is "final" if two preconditions are satisfied: (1) the action must be the "consummation of the agency's decisionmaking process," and (2) the action must be one "by which rights or obligations have been determined or from which legal consequences will flow." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)); *see also Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.").

As the case law makes clear, these two characteristics of "final agency action" are prerequisites to APA review, whether a plaintiff seeks to "compel agency action" under Section 706(1) or to "set aside agency action" under Section 706(2). *See Norton*, 542 U.S. at 62-63; *Vill. of Bald Head Island*, 714 F.3d at 195; *see also City of New York v. United*

9

*States Dep't of Def.*, 913 F.3d 423, 432 (4th Cir. 2019). However, when a plaintiff asks a court to compel agency action under Section 706(1), one additional requirement applies. In such cases, the plaintiff must show that the action the plaintiff seeks to compel is one that the agency is "legally required" to take. *Norton*, 542 U.S. at 63-64.

The plaintiffs argue that their claims meet these jurisdictional requirements, and that the district court erred in holding otherwise. According to the plaintiffs, the "design choices" at issue are discrete, because those choices can be analyzed "without reference" to one another. The plaintiffs also assert that the challenged decisions are final, because each will lead directly to a differential undercount. Finally, the plaintiffs contend that because they have presented each APA claim exclusively as a request to "set aside agency action" under Section 706(2), it is not necessary to show that any action of the Census Bureau is "required by law." After considering these arguments, we conclude that the district court did not err in dismissing the APA claims, because they do not meet the jurisdictional requirement of "final agency action" within the meaning of the APA.

Initially, like the district court, we observe that there is tension between the substantive allegations in the Complaint and the plaintiffs' contention that their APA claims do not seek to "compel agency action." *See* 5 U.S.C. § 706(1). Although styled as claims to "set aside agency action" under Section 706(2), the essence of the plaintiffs' APA claims is that the Census Bureau is not doing *enough* to ensure an accurate enumeration in the 2020 Census, and must be compelled to do more. *See* Compl. ¶ 217 ("Defendants have adopted a program for the 2020 Census . . . that inadequately addresses the challenge of reaching hard-to-count populations."). Under such circumstances, we question whether

10

the plaintiffs can avoid the strict limitations on suits to "compel agency action" under Section 706(1) simply by framing their APA claims as requests to "set aside" the Census Bureau's "decisions" *not* to act.[2] Nevertheless, we need not decide whether the plaintiffs are required to proceed under Section 706(1), because we hold that the "design choices" at issue lack "discreteness" and "finality," requirements that apply to suits brought under both Section 706(1) and Section 706(2). *See Norton*, 542 U.S. at 62-63.

The majority, if not all, of the plaintiffs' APA claims fail because they do not challenge actions that are "circumscribed" and "discrete." *See id.*; *Vill. of Bald Head Island*, 714 F.3d at 194. In fact, the plaintiffs disavow any argument that the alleged deficiencies in the Operational Plan are "simply the result of a choice of methodology." Instead, as pleaded, the plaintiffs allege only that the defendants' "design choices" are *insufficient* in light of various other factors. *See, e.g.*, Compl. at ¶ 69 (alleging "insufficient planned hiring of enumerators"); ¶ 114 (alleging "insufficient network of area census offices"); ¶ 160 (challenging the "sufficiency" of plan to rely on administrative records); ¶ 168 (alleging "insufficient partnership program staffing") (formatting altered). So described, these claims bear little resemblance to the type of "circumscribed" actions specifically identified in the text of the APA as reviewable. *See* 5 U.S.C. § 551(13) (listing

---

[2] We also question whether the injuries alleged by the plaintiffs, as pleaded, are redressable by an order "setting aside" the Census Bureau's "decisions," the sole remedy available under Section 706(2). Nevertheless, because we affirm the dismissal of the APA claims for lack of "final agency action," we need not determine whether the plaintiffs' insistence on proceeding under Section 706(2) renders their claims non-redressable.

11

the "whole or a part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof" as reviewable actions); *see also Norton*, 542 U.S. at 62-63.

The plaintiffs' description of their claims confirms this assessment. For example, in alleging that the Census Bureau plans to hire an "insufficient" number of Enumerators, the plaintiffs notably do *not* allege that any specific number of Enumerators is required to conduct the Census. Instead, over the course of forty-five paragraphs, the plaintiffs explain that the number of Enumerators the Census Bureau plans to hire is "insufficient" because of numerous other problems in the broader Non-Response Follow-Up Program (NRFU), as reflected in the Operational Plan. As alleged, these problems include overreliance on the first ever "Internet Self-Response" option for completing the Census, insufficient testing of "new protocols" and "new technologies," and an "irrationally optimistic" assumption that increased use of administrative records will reduce NRFU workload. Thus, these challenges under the APA to the number of Enumerators that the Census Bureau proposes to hire are neither "circumscribed" nor "discrete." The sufficiency of the number of Enumerators hired inextricably is dependent on the other programs and decisions that the plaintiffs themselves identify.

This same jurisdictional defect, the failure to identify actions that are "circumscribed" and "discrete," also forecloses the APA claims that challenge the "insufficient network of area census offices," the overreliance on administrative records within the NRFU program, the increased use of "in-office address canvassing," and "insufficient partnership program staffing." As those allegations make clear, the identified "decisions" are "insufficient" only in relation to one another and to the broader Operational

12

Plan that the plaintiffs deem "inadequate" in its entirety. Thus, while we acknowledge the general principle that the multiplicity of an agency's failings is not a barrier to judicial review, we conclude that this principle does not carry the day given the content of the particular pleadings before us.

Contrary to their position on appeal, the plaintiffs do not actually challenge multiple discrete decisions made by the Census Bureau. Instead, as pleaded, the various "design choices" being challenged expressly are tied to one another. "Setting aside" one or more of these "choices" necessarily would impact the efficacy of the others, and inevitably would lead to court involvement in "hands-on" management of the Census Bureau's operations. *See Norton*, 542 U.S. at 66-67. This is precisely the result that the "discreteness" requirement of the APA is designed to avoid. *Id.* at 67; *see also City of New York*, 913 F.3d at 434; *Clear Sky Car Wash LLC v. City of Chesapeake, Va.*, 743 F.3d 438, 445 (4th Cir. 2014); *Vill. of Bald Head Island*, 714 F.3d at 194. For these reasons, we hold that the plaintiffs have failed to identify any "final agency action" subject to judicial review under the APA.

Our conclusion is not altered by the fact that one of the APA claims pertains to the cancellation of specific field tests, a decision that occurred in 2016. Even if we were to assume that this decision was a "discrete" action, the decision nevertheless falls outside the scope of APA review because the cancellation of those field tests did not "give rise to legal consequences, rights, or obligations." *Invention Submission Corp.*, 357 F.3d at 458 (internal quotations omitted). Instead, as pleaded, the decision to cancel field tests impacts the plaintiffs only insofar as the decision leaves the Census Bureau "less prepared" to

13

handle any "unforeseen" problems that "may" arise from the actual procedures set forth in the Operational Plan, a confluence of circumstances that the plaintiffs assert would create a disproportional impact on undercounted communities. These attenuated allegations amount to little more than a "best guess" regarding the consequences of cancelling the tests at issue. Therefore, because the Complaint fails to include specific facts indicating that the Census Bureau's decision to cancel the field tests gave rise to "legal consequences, rights, or obligations," *see id.*, we hold that the cancellation of field tests does not constitute "final agency action" under the APA. *See Franklin*, 505 U.S. at 797.

In concluding that the plaintiffs have failed to identify a "final agency action" subject to judicial review, we emphasize that our holding is based on the broad, sweeping nature of the allegations that the plaintiffs have elected to assert under the APA. Our decision today neither disturbs the "basic presumption of judicial review" embodied by the APA, *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967),[3] nor conflicts with the Supreme Court's recent guidance that courts can and frequently should "entertain[] both constitutional and statutory challenges to census-related decisionmaking." *Dep't of Commerce*, 139 S. Ct. at 2568. Instead, we merely reaffirm and apply the longstanding jurisdictional requirements that must be satisfied when proceeding under the APA. Because we conclude that these requirements have not been met here, we affirm the district court's dismissal of the APA claims for lack of jurisdiction.

---

[3] Abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977).

14

B.

We turn now to consider the district court's decision dismissing as unripe the plaintiffs' Enumeration Clause challenge. We review the district court's dismissal of these claims de novo, and the court's decision to deny leave to reintroduce the claims for abuse of discretion. *Attkisson v. Holder*, 925 F.3d 606, 619 (4th Cir. 2019) (leave to amend); *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018) (ripeness).

The ripeness doctrine derives from Article III limitations on judicial review, and ensures that judicial intervention in a controversy is timed appropriately. *Deal*, 911 F.3d at 190 (citation omitted); *see also Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998). When examining ripeness in the context of agency action, our inquiry generally turns on two considerations: (1) the fitness of the issues presented for judicial review; and (2) the hardship that the parties would endure by delayed adjudication. *Deal*, 911 F.3d at 190-91.

The plaintiffs argue that the Enumeration Clause claims that they seek to present satisfy both these criteria.[4] Thus, the plaintiffs assert that the district court erred in holding that such claims would be unripe until after the 2020 Census is completed, and compounded that error in refusing to allow the plaintiffs to replead their claims after the Operational Plan was announced. In response, the defendants do not defend the district

---

[4] Based on their briefs and oral argument, we understand that the plaintiffs do not seek reinstatement of their Enumeration Clause claim based on underfunding by Congress. Therefore, we do not disturb the district court's dismissal of that claim, nor do we address the reasons given by the district court for doing so.

court's ripeness analysis but maintain that the district court ultimately reached the correct result by dismissing the Enumeration Clause claims.

We agree with the plaintiffs that the district court erred in its ripeness analysis. First, we hold that the plaintiffs' claims are "fit" for review. *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). A controversy becomes "fit" for review when it no longer is "dependent on future uncertainties." *Id.* We hold that, at the latest, this point occurred when the defendants announced that the Operational Plan was final and the plaintiffs sought leave to file an amended complaint. Once announced as part of the "final design" for the Census, the procedures challenged by the plaintiffs no longer credibly could be described as "uncertain." *Id.*; *see also U.S. House of Representatives v. U.S. Dep't of Commerce*, 11 F. Supp. 2d 76, 91 (D.D.C. 1998) (holding that a challenge to Census procedures becomes ripe once it is "certain that the Bureau will employ [the procedures] in conducting the apportionment enumeration").

We also hold that delayed adjudication would result in hardship to the plaintiffs. The Supreme Court squarely has held that it is "not necessary" for courts "to wait until the census has been conducted" to consider challenges to the Census Bureau's planned procedures, "because such a pause would result in extreme—possibly irremediable— hardship." *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 332 (1999); *see also Dep't of Commerce v. New York*, 139 S. Ct. at 2561 (reviewing a pre-Census challenge to the decision to add a citizenship question to the Census questionnaire). As in *House of Representatives*, the injuries that the plaintiffs assert in this case arise from procedures that the defendants intend to use, or not use, in conducting the Census. 525

16

U.S. at 320-21. Thus, the hardship that the plaintiffs would experience from the delay in adjudicating these claims is well established.

For these reasons, we hold that the plaintiffs' Enumeration Clause challenge to the "methods and means" to be used in the 2020 Census was ripe by the time the plaintiffs sought leave to reintroduce those claims in February 2019, and that the district court's contrary conclusion was legal error. And, because a district court necessarily abuses its discretion when its ruling is "based on an erroneous view of the law," *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990), we further hold that the district court abused its discretion in denying on ripeness grounds the plaintiffs' request to file an amended complaint setting forth their Enumeration Clause claims.

As reflected by this holding, we decline the defendants' request that we examine their alternative grounds for dismissal of the Enumeration Clause claims, including lack of Article III standing, the political question doctrine, and because the Enumeration Clause claims fail to state facts plausibly establishing a constitutional violation. The district court has not considered these additional arguments in the context of the amended complaint that will be filed when the proceedings resume in the district court. Therefore, we decline to consider the defendants' additional arguments in the first instance on appeal. Like the Supreme Court, we are a "court of review, not first review." *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005).

## III.

In remanding the case to the district court on the Enumeration Clause claims, we do not express any view regarding the ultimate viability of such claims that may be asserted in an amended complaint. Accordingly, for the reasons stated, we affirm the district court's judgment dismissing the APA claims, reverse the court's judgment dismissing the Enumeration Clause claims and denying the plaintiffs leave to file an amended complaint, and remand the case to the district court for proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*

18

GREGORY, Chief Judge, concurring:

The delegates to the Constitutional Convention in Philadelphia toiled all summer to produce a lasting document that would provide stability to the government and the promise of liberty to the governed. At the close of the Convention, Benjamin Franklin was asked what the Framers had wrought. He answered, "A Republic if you can keep it." Andrew C. McLaughlin, The Courts, The Constitution and Parties: Studies in Constitutional History and Politics 151 (1912). The life of the "Republic" is tied to the Enumeration Clause of the Constitution.

That Clause mandates that Congress make an "actual Enumeration" of persons in the nation every ten years. U.S. Const. art. I, § 2, cl. 3. The Constitution's command that a census be taken was for the purpose of apportioning the House of Representatives—the only house of the legislature the Framers required to be composed of "Members" chosen "by the People of the several states." *Id.* cl. 1. In trying to convince Anti-Federalists that apportionment as described in the Enumeration Clause would not be subject to the political whim of the national legislature, Alexander Hamilton said that "an actual census or enumeration of the people must furnish the rule, a circumstance which effectually *shuts the door to partiality or oppression*." The Federalist No. 36, at 226 (Alexander Hamilton) (J. Cooke ed., 1961) (emphasis added). The foundation of representative democracy, then, rests in large measure upon Congress' faithful and meaningful compliance with the Constitution's mandate to count all persons in the nation.

Justice Holmes wrote, "[A] page of history is worth a volume of logic." *New York Tr. Co. v. Eisner*, 256 U.S. 345, 349 (1921). From the very beginning, the Enumeration

19

Clause was born in the tainted cauldron of racism, sexism, and classism. As the majority opinion notes, with each Census, there has been an undercount of the people. Maj. Op. at 3. "Since at least 1940, the Census Bureau has thought that the undercount affects some racial and ethnic minority groups to a greater extent than it does whites." *Wisconsin v. City of New York*, 517 U.S. 1, 7 (1996). To this day, the Census Bureau acknowledges the need to count these "hard-to-count populations." J.A. 274; Appellees' Br. (ECF No. 34) at 9. That there has been a historical undercount does not obviate Congress' constitutional mandate. Indeed, it magnifies that responsibility.

The history and function of the Enumeration Clause evince the importance of the constitutional issue presented here. The question—whether Congress, by agency of the Executive Branch's Bureau of the Census, has violated the Enumeration Clause of the Constitution because it has demonstrated that it will unlikely make a meaningful and faithful enumeration of all persons in the upcoming 2020 Census—is not a political one. If this constitutional question were beyond the reach of judicial review, the People would have no ordered redress of Legislative and Executive Branch actions or inactions that thwart their essential constitutional right. If Congress is in violation of the Enumeration Clause's mandate, it cannot take refuge behind the fig leaf of deference to administrative procedure. Nothing is more existential to the preservation of the "Republic" than requiring an "actual Enumeration" without "partiality or oppression."